ESTATE OF PARKS; JONES, EXR., Appellant,

v.

HODGE et al., Appellees.

[Cite as *Estate of Parks v. Hodge* (1993), 87 Ohio App.3d 831.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 63030, 63031.

Decided July 26, 1993.

*Gareau & Dubelko, James M. Dubelko* and *Michael R. Gareau,* for appellant.

*Daniel R. Corcoran,* for appellees.

*Rosemary D. Durkin* and *Stephen Mogyrody,* Cuyahoga County Assistant Prosecuting Attorney, for Unknown Heirs.

HARPER, Judge.

Appellant, Jessie Jones, the Executor of the Estate of Jake Parks, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Probate Division. For the reasons set forth below, we reverse and remand.

834

## I

Jake Parks and his wife, Clara Parks, executed identical last will and testaments leaving their entire estates to each other. In their respective wills, they made specific bequests to the same individuals if they did not survive each other.

Jake Parks died on August 10, 1983. Clara Parks predeceased him on May 24, 1983. The record shows that they had no children. Both parties designated thirty-eight persons in their respective wills as beneficiaries to their estates.

The Executor of the Estate of Jake Parks filed a complaint requesting that the court declare next of kin of Jake Parks for purposes of distribution of the estate. The complaint stated that certain beneficiaries specifically indicated in the will of Jake Parks were also related to him by consanguinity.

A hearing was conducted before a referee to determine next of kin and construction of Jake Parks' will. The referee concluded without explanation that the residual clause of Jake Parks' will was invalid.

The referee found that Jake Parks was a half-blood brother of one Ruth McCord. It was alleged that Ruth McCord had three children, one of whom was Mary Robinson, who also was listed in the will as a beneficiary. Mary Robinson predeceased Jake Parks. Her death certificate indicates her father was George McCord, while her mother was unknown. The two other alleged children of Ruth McCord were Daisy Smalley (nee McCord) Cunningham and Mamie Leverett (nee McCord).

The referee concluded that:

"The birth certificate and death certificates of the children of Mamie McCord Leverett are insufficient to establish their relationship to Ruth McCord through their mother, Mamie McCord Leverett. *It is entirely possible that their mother, Mamie McCord Leverett, was not Ruth McCord's daughter but Mr. McCord's daughter by another marriage in which case they would not be blood relatives of the decedent.*

"The affidavit submitted by George Leverett is also insufficient to establish a relationship to the decedent via his mother.

"Based on the lack of evidence presented, this Court concludes that Jake Parks died leaving no next of kin.

"It is therefore recommended that any lapsed legacies or assets not specifically devised must escheat to the State of Ohio." (Emphasis added in part.)

Case Nos. 63030 and 63031 were consolidated for appellate disposition.

## II

Appellant assigns the following errors for our review:

"I.  The trial court erred in holding that the specific bequests of real property in the last will of Jake Parks adeemed, where the property was sold, after the death of Jake Parks, out to the estate of Jake Parks' wife, who predeceased him by three months.

"II.  The trial court erred in holding that Jake Parks died without next of kin and that therefore his [residual] estate must escheat to the state of Ohio."

Appellant, in her first assignment of error, challenges the trial court's adoption of the referee's report holding that the specific bequests of real property in Jake Parks' will were adeemed.  At issue is the construction of the following provisions in Jake Parks' will and the subsequent disposition made by the referee and adopted by the trial court:

### "ITEM V

"I give, devise and bequeath to FOSTER JONES and JESSIE JONES, share and share alike, the real estate at 2987 Ludlow Road, Shaker Heights, Ohio, in fee simple to be theirs absolutely and forever, including drapes which are presently in the house, provided, however, that within six months following the closing of my estate in Probate Court said FOSTER JONES and JESSIE JONES shall pay the sum of Fifteen Thousand Dollars ($15,000.00) to CLARENCE JETHRO and PATRICIA JETHRO."

The referee, in construing the above clause based on certain events which we shall analyze *infra,* stated:

"The language in Item V establishes a specific devise of the Ludlow property to Foster and Jessie Jones contingent upon payment of $15,000.00 to Clarence and Patricia Jethro;  however, because the Ludlow property was never an asset of the testator's estate, the devise is adeemed and all beneficiaries' rights are extinguished.  The beneficiaries under this Item are not entitled to any distribution including cash in lieu of real property from this estate."

The doctrine of ademption is applicable in two ways:  (1) where a thing specifically bequeathed no longer exists at the testator's death, or (2) where, in the lifetime of the testator, he made a gift or provides a substitute for the bequeathed item and an intention to revoke or cancel the bequest is evidenced by such act.  *Partridge v. Pidgeon* (1957), 166 Ohio St. 496, 2 O.O.2d 504, 143 N.E.2d 840.  Thus, where the testator's will makes a specific bequest of a particular item of property (such as "my gold ring"), and the item does not exist as part of his estate at the time of his death (*e.g.,* the item is sold, given away or lost), the

bequest is "adeemed"; that is, it fails completely. This is true even if the subject of the gift is lost, or is taken by eminent domain, such that it was not the testator's intent that the testamentary gift be adeemed. The testator's intent to adeem or not to adeem is not controlling. *Darlington v. Dillon* (1939), 63 Ohio App. 197, 16 O.O. 479, 25 N.E.2d 859. Ademption is operative against a bequest or devise of specific property in all cases where the property is not in the testator's estate at his death. *Bool v. Bool* (1965), 165 Ohio St. 262, 59 O.O. 356, 135 N.E.2d 372. Therefore, where the gift of a specific legacy or devise is adeemed because it is not in existence as part of the testator's estate at his death, the rights of the beneficiaries are extinguished. *In re Estate of Mellott* (1954), 162 Ohio St. 113, 54 O.O. 53, 121 N.E.2d 7. See, also, *Darlington, supra*. Absent a contrary expression in the instrument the beneficiaries are denied the benefit of the thing given in the will or any property in lieu thereof. See *Bool, supra*.

■ As a general rule, the doctrine of ademption does not apply to a general legacy. For example, if the testator makes a general legacy of $1,000 to Lassie, and, at testator's death, there is not $1,000 cash in the estate, other property in the residuary estate must be sold to satisfy this general legacy. However, a general legacy will adeem in a situation where there has been a bequest for a particular purpose and the testator in his lifetime made a cash advance in satisfaction of that same purpose. See *Bool, supra,* and *Gilbreath v. Alban* (1840), 10 Ohio 64.

Such exception does not apply in a demonstrative legacy. The doctrine of ademption cannot be applied to a demonstrative legacy. *In re Estate of Mellott, supra*. For example, if the testator makes a bequest to Lassie for $1,000, "to be paid out of the proceeds of Blackacre," and if at testator's death he does not own Blackacre, the $1,000 legacy is not adeemed. The $1,000 must be raised by the sale of other property in testator's residuary estate. See *Nash v. Hamilton* (1918), 8 Ohio App. 66, 39 Ohio C.O. 462. The reason is that the testator intended to give $1,000 and not Blackacre to Lassie, and the existence or nonexistence of Blackacre does not control the satisfaction of this intent. If Blackacre is no longer in the ownership of the testator at the time of his death, the legacy of $1,000 to Lassie may be satisfied from any property or fund of the estate not specifically devised or bequeathed. A second reason also is a strong desire by courts to avoid the application of the doctrine of ademption unless it is absolutely necessary.

■ In the instant case, the bequests in the testamentary will of Clara Parks as well as that of Jake Parks to Clarence Jethro and Patricia Jethro are demonstrative legacies. The doctrine of ademption is not applicable to defeat the intent of both Clara Parks and Jake Parks that Clarence Jethro and Patricia Jethro receive $15,000 at their death. Contrary to the probate court's construc-

tion of the doctrine of ademption, the Ludlow Road property was only one of several avenues of satisfying their intention to give $15,000 to Clarence Jethro and Patricia Jethro, and not the only avenue. The legacy would only adeem if at the death of the testator, the Ludlow Road property was not in existence and no other property or fund was left in the residuary estate to satisfy the intent of the testator. See *Nash v. Hamilton, supra.* It is settled law in Ohio that the rigid rules of interpretation which are applied to deeds have never been considered applicable to wills. *Smith v. Berry* (1838), 8 Ohio St. 365. When construing a will, a court should not place greater emphasis on grammar and proper tenses to arrive at a result which does not signify an intention to convey the whole interest of the testator.

Accordingly, the trial court's application of the doctrine of ademption to defeat the bequest to Clarence Jethro and Patricia Jethro is overruled.

■ The next issue is the application of the doctrine of ademption to the bequest of the real estate property at 2987 Ludlow Road by Jake Parks to the Joneses. The trial court concluded that the rights of the Joneses were extinguished based on the referee's finding that "the Ludlow property was never an asset of the testator's estate." We held *supra* that the law of ademption is operative against a bequest or devise of specific property in all cases where the property is not in the testator's estate at his death.

In the instant case, the uniqueness of the facts necessitates our determination of the vesting of the property in order to arrive at an understanding of whether the doctrine of ademption is applicable. The record shows that Clara Parks left her entire estate to her husband, Jake Parks, if he did not predecease her. The record also shows that Jake Parks died three months after Clara Parks, and, therefore, did not predecease her. See R.C. 2105.21. At the time of Clara Parks' death, the Ludlow property was not sold and was therefore immediately vested in Jake Parks and became part of his estate. In *Stahl v. Mohr* (1923), 35 Ohio App. 411, 415, 172 N.E. 431, 433, the court held:

"In Ohio as well as in most other jurisdictions the law favors the vesting of any and all interest in the testator's estate in the devisee or legatee at the earliest possible time, upon the death of the testator, unless an intention to the contrary clearly appears in the will. The fact that the testator directs the property to be 'set apart' or payment or distribution made at a future time does not prevent the vesting of the estate at the time of the death of the testator." See, also, *McSteen v. Barclays Bank Ltd.* (1967), 12 Ohio Misc. 29, 40 O.O.2d 489, 227 N.E.2d 280.

In the instant case there is no indication that Clara Parks intended to postpone the vesting of the interest of her husband, Jake Parks, in her estate until after an occurrence of a future event, like payment or distribution.

The record shows that at the time of Jake Parks' death, the Ludlow property was not sold. The Ludlow property was erroneously sold out of Clara Parks' estate but only after the death of Jake Parks. As we reasoned *supra*, since the property was in existence at the time of Jake Parks' death, all bequests made by Jake Parks were vested in the legatees at his death. The mere fact that the property was erroneously sold albeit as part of the Estate of Clara Parks by the same executor for both estates before distribution does not work to defeat the law of vesting, which was complete at the time of the death of Jake Parks and at which time the bequeathed property was vested in the Joneses. The Ohio Supreme Court held in *Linton v. Laycock* (1877), 33 Ohio St. 128, paragraph two of the syllabus:

"The law favors the vesting of estates, and in the construction of devises of real estate, the estate will be held to be vested in the devisee at the death of the testator, unless a condition precedent to such vesting is so clearly expressed that the estate can not be regarded as so vested, without directly opposing the terms of the will. To this end, words of seeming condition will, if they can bear that construction, be held to have the effect of postponing the right of possession only, and not the present right to the estate." See, also, *Tax Comm. of Ohio v. Oswald* (1923), 109 Ohio St. 36, 53, 141 N.E. 678, 683; *Phillips v. Cole* (1918), 11 Ohio App. 431; *Fletcher v. Rynd* (1920), 18 Ohio App. 136, 141.

Therefore, the proceeds of the sale of the Ludlow property which were subsequently turned over to the Estate of Jake Parks by the Estate of Clara Parks should be distributed to the Joneses in accordance with Jake Parks' will, *i.e.*, less the $15,000 which should be paid back to the estate of Jake Parks to make up for the $15,000 distribution to the Jethros if the Jethros were paid from other than the proceeds from the Ludlow property. See *Partridge, supra.*

Accordingly, we sustain appellant's first assignment of error and overrule the trial court's application of the doctrine of ademption to extinguish the rights of the Jethros and the Joneses from benefitting from Jake Parks' last will and testament.

### III

■ Appellant argues in her second assignment of error that the trial court erred in holding that Jake Parks died without next of kin and that his residual estate must escheat to the state of Ohio. We agree. The law of escheat must not be applied cavalierly but must be the last resort in the construction of a will based on an unquestionable determination that there are no next of kin. In *Borovskaya v. State* (1977), 54 Ohio App.2d 79, 8 O.O.3d 132, 375 N.E.2d 57, paragraph two of the syllabus, the court held:

"The specific mandate of R.C. 2105.06 *et seq.*, governing escheats of property to the state, must be strictly followed to create a valid finding and judgment by the Probate Court of the escheat of property to the state where a decedent leaves no heirs. To be valid, such judgment of escheat must be that there are no heirs * * *."

In the instant case, the referee's report which was adopted by the court states as follows:

"The birth certificate and death certificates of the children of Mamie McCord Leverett are insufficient to establish their relationship to Ruth McCord through their mother, Mamie McCord Leverett. It is entirely possible that their mother, Mamie McCord Leverett, was not Ruth McCord's daughter but *Mr. McCord's* daughter by another marriage in which case they would not be blood relatives of the decedent.

"The affidavit submitted by George Leverett is also insufficient to establish a relationship to the decedent via his mother." (Emphasis *sic.*)

The referee rejected the birth and death certificates as insufficient but failed to indicate what would be acceptable to the court. The referee's rejection because it is "entirely possible" that the individuals presenting evidence of next of kin are only relatives by marriage and not blood relatives had no basis. A court cannot base its decision on speculation or conjecture or doubt that may arise from extraneous facts seeing that in life anything is possible. It is a luxury not affordable when a court is called upon to construe a will; its decision must be based on facts before it.

We also do not share in the court's holding that the affidavit is insufficient to establish kinship without stating its reason for rejecting the affidavit. It is not new that, in many cases involving a will, there may not be a known governmental document like birth or death certificates supporting the claims; affidavits and other extraneous evidence are acceptable to aid in a proper determination.

The trial court's determination that there are no next of kin and the determination that the residual Estate of Jake Parks escheat to the state is arbitrary and capricious and is therefore remanded for further hearing and determination consistent with this opinion.

Appellant's second assignment of error is also sustained. The judgment of the trial court is reversed on both assignments of error and this cause is remanded to that court for disposition on the issue of next of kin consistent with this opinion.

*Judgment accordingly.*

NAHRA and BLACKMON, JJ., concur.