## In re ESTATE OF YORK.

[Cite as In re Estate of York (1999), 133 Ohio App.3d 234.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA98–07–076 and CA98–07–082.

Decided March 15, 1999.

*Herman H. Wenker,* for appellant and cross-appellee Lynette D. York.

*Michael J. Davis,* for appellee and cross-appellant estate of Donald W. York.

WILLIAM W. YOUNG, Judge.

Plaintiff-appellant and cross-appellee, Lynette D. York ("appellant"), appeals a decision by the Warren County Court of Common Pleas, Probate Division, denying a motion to distribute to her the balance of a settlement received on behalf of the estate of Donald York ("the estate"). Defendant-appellee and cross-appellant, the estate, appeals the trial court's entry reducing the attorney fees awarded in conjunction with the settlement. We reverse and remand this case for proceedings not inconsistent with this opinion.

The decedent, Donald York, died on December 10, 1995. In Item II of his Last Will and Testament, dated April 19, 1995, he made a specific bequest giving appellant the real estate located at 1190 Marian Avenue, Maineville, Ohio. By Item III of the will, all of the rest, residue and remainder of the estate was bequeathed to Donald's brother, Leo York, sister, Ruth Jones, and nephew, Kenny Jones, to be divided equally among them. At the will's execution and at the time Donald died, Donald, his heirs and his next-of-kin believed that Donald was the sole owner of the Maineville property. However, due to two instances of negligence by a prior attorney, Donald was vested with only a one-sixth interest in the property. The remaining five-sixths interest was owned by other family members.

When Donald died, the estate's executor discovered the errors, and a dispute arose concerning how the interest in the property was to pass. Appellant hired

her own counsel, and the estate's executor retained an attorney who filed a malpractice lawsuit against the attorney who had made the original errors. On October 2, 1997, the probate court approved the submitted contingency fee arrangement between the estate and its attorney, finding that the agreement was "fair, customary, and reasonable."

The estate's attorney then proceeded to contact the malpractice insurance carrier for the original attorney. The malpractice suit was quickly settled, resulting in a settlement payment to the estate of $116,667, representing five-sixths of the property's total value. Donald's undisputed one-sixth interest in the property passed to appellant without dispute.

The problems concerning the Maineville property began long before Donald's death. When Donald's mother, Stella York, died intestate, it was the intention of all intestate heirs that Donald receive the property. Accordingly, an attorney was retained to effectuate this process. The attorney prepared waivers for each of Stella's children to execute that purported to transfer their interest to Donald. However, pursuant to R.C. 1339.60, the effect of the waivers was to legally presume that the children predeceased her. Rather than Donald receiving all of the interest in the property, Stella's children's heirs-at-law or next-of-kin received the intestate shares. The same attorney had earlier committed the identical error when Donald's father, John York, had died. At that time, it was the intention of all parties that Stella receive the property.

As a result of the attorney's errors, the interest in the property was divided among thirteen people. Donald received a one-sixth interest. Leo's two oldest children each received a four forty-fifths interest, while his three youngest children each received a one-thirtieth interest. Ruth's three oldest children received a 19/270th interest each, and her two youngest children received a one thirtieth share each. Donald's brother, Neal York, predeceased Donald, and, therefore, Neal's two children each received a five thirty-sixths interest in the property.

Appellant challenged the distribution of the settlement funds, claiming that she was entitled to the entire settlement amount in lieu of the five-sixths interest she did not receive due to the malpractice. In its decision filed on June 18, 1998, the trial court denied her motion, holding that Donald could not bequeath an interest that he did not possess. The trial court treated the bequest of the property as adeemed with regard to the five-sixths interest. Specifically, the trial court found that the bequest did not fall into any of the exceptions to ademption listed in R.C. 2107.501(A). The trial court ordered that the proceeds from the settlement be distributed as part of the estate's residue. Appellant appeals this decision, raising a single assignment of error.

On that same day, June 18, 1998, the trial court also issued a decision and entry granting appellant's motion to set aside the approved fee arrangement. The trial court noted that although the attorney's efforts resulted in a substantial benefit to the estate, the case did not require significant preparation for litigation nor did it proceed to trial. The trial court ordered that the appropriate fee was $29,166.75, significantly less than that which would have been calculated under the contingency fee agreement. The estate filed a cross-appeal challenging this entry, also raising a single assignment of error.

The appeals have been consolidated, and we shall address each appeal in turn.

Appellant's assignment of error:

"The court erred when it applied the principle of ademption to a specific bequest that still existed at the time of the testator's death, but in a different proportion or form."

In her assignment of error, appellant contends that the bequest at issue should not have been considered adeemed. Appellant argues that even though only a portion of the interest in the property was vested in Donald, this fact should not prevent appellant from receiving the benefit of the bequest because the property existed in substantially the same form. The estate responds that the bequest was adeemed because Donald could not give something he did not possess, and that this bequest does not fall into any of the exceptions to ademption listed in R.C. 2107.501(A).

Ademption is the doctrine whereby a bequest is extinguished or withheld in consequence of some action by the testator. *King v. King* (1992), 82 Ohio App.3d 747, 751, 613 N.E.2d 251, 254, citing *Ellard v. Ferris* (1915), 91 Ohio St. 339, 110 N.E. 476. Ademption constitutes a revocation by implication by the testator's having parted with the subject of the legacy during his lifetime, rendering the legacy inoperative. *King,* 82 Ohio App.3d at 751, 613 N.E.2d at 254. The doctrine of ademption is applicable in two ways: (1) where a thing specifically bequeathed no longer exists at the testator's death, or (2) where, in the lifetime of the testator, he made a gift or provides a substitute for the bequeathed item and an intention to revoke or cancel the bequest is evidenced by such act. *Estate of Parks v. Hodge* (1993), 87 Ohio App.3d 831, 835, 623 N.E.2d 227, 229, citing *Partridge v. Pidgeon* (1957), 166 Ohio St. 496, 2 O.O.2d 504, 143 N.E.2d 840. Thus, where the testator's will makes a specific bequest of a particular item of property, and the item does not exist as a part of his estate at the time of his death, the bequest is "adeemed," and it fails completely. *Estate of Parks,* 87 Ohio App.3d at 835–836, 623 N.E.2d at 229–230.

Ademption is applicable when a testator owns a piece of property when a will is executed, but, prior to the testator's death, the testator parts with the

property, whether willingly or not. The present case does not involve such circumstances. Rather, Donald never possessed the contested five-sixths interest in the Maineville property. Because he could not convey the property, he could not adeem the property. Therefore, ademption is inapplicable to the instant case. Accordingly, we find that the probate court erred in finding that the bequest of the Maineville property was adeemed with regard to the five-sixths interest.

Although we find that ademption is not applicable to the instant case, we note that Donald, and therefore his estate, did have a right of action concerning the malpractice that led to his not being the sole owner of the property. This right of action had an easily ascertainable value, namely, the appraised value of the Maineville property. The estate's contention that those who presently own the five-sixths interest should also receive the benefit of the malpractice settlement would give these beneficiaries the double benefit of both the property and the monetary value of the property.

Such a state of affairs causes grave concern, because it was these same beneficiaries who earlier intended to retain no interests in the Maineville property and who knew of Donald's intention to give all of the property to appellant. These parties earlier sought to turn over their interests in the property to Donald. Now they seek to benefit from errors in which Donald played no part.

Due to these circumstances, we must recognize that significant issues still exist concerning whether the beneficiaries should be allowed to retain the benefit of both the property and the settlement. We are concerned that the parties did not raise, and that the probate court did not address, whether allowing those who own the five-sixths interest in the property to also retain the settlement proceeds would work an injustice by unjustly enriching such persons. We believe that significant issues still exist as to what remedy best alleviates this unjust enrichment. We are also concerned that neither party raised the issue of whether any action to quiet title should have been made with regard to the Maineville property.

Due to these unresolved issues, we remand the case to the probate court. There, the parties may have the benefit of presenting evidence and arguments on these and any other dispositive issues before the court, and the probate court will be given the opportunity to properly resolve this dispute.

Accordingly, we find appellant's assignment of error to be well taken. The decision of the probate court is reversed and the cause remanded.

The estate's cross-assignment provides:

"The court erred when it reduced the attorney's fees for the estate of Donald York without proper justification."

In its cross-assignment of error, the estate presents numerous arguments challenging the probate court's reduction in the fee awarded to the estate's attorney for his representation in the malpractice suit. The basis of the estate's attacks on the probate court's action is that appellant lacks standing to challenge the fee arrangement. The estate also contends that, even if appellant did have standing, appellant's challenge to the fee arrangement was not timely.

Appellant also alleges that the trial court committed error, but for another reason. Appellant asserts that because the trial court did not order the attorney to present evidence demonstrating that the work performed was commensurate with the fees awarded, the evidence does not support the large fee awarded. Appellant rebuts the estate's argument that she does not have standing by asserting that she does have standing so long as she is awarded the property at issue or the benefit of the settlement.

We first address whether appellant had standing to challenge the fee agreement. The question of standing is dependent upon whether the party challenging the order has a "personal stake in the outcome of the controversy." *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75, 25 OBR 125, 129, 495 N.E.2d 380, 384. This ensures "that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically capable of judicial resolution." *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641. A party will have standing where the party can demonstrate an injury in fact. An injury in fact requires a showing that the party has suffered or will suffer a specific injury, that the injury is traceable to the challenged action, and that it is likely that the injury will be redressed by a favorable decision. *Eng. Technicians Assn. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106, 110–111, 593 N.E.2d 472, 474–475.

In the instant case, whether appellant has standing to challenge the attorney fee agreement depends upon whether she is awarded the settlement proceeds. If appellant is awarded the proceeds, she clearly has standing to challenge the attorney fee agreement. If she is not awarded the proceeds, appellant has no standing to challenge the agreement because it will have no bearing upon her interests. Therefore, the issue of whether appellant has standing to challenge the contingent fee agreement is remanded to the trial court for consideration based upon its determination of whether appellant is entitled to the settlement proceeds of the malpractice action.

The estate also challenges the probate court's power to modify the amount of attorney fees recovered under the contingent fee agreement, arguing that the agreement was previously approved by the probate court and that any challenge to the agreement should be deemed untimely. The payment of

reasonable attorney fees lies within the sound discretion of the probate court. *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 298, 620 N.E.2d 966, 969, citing *In re Keller* (1989), 65 Ohio App.3d 650, 584 N.E.2d 1312. An abuse of discretion will be found where the probate court's decision is not supported by the record or is contrary to law. *Id.* at 655, 584 N.E.2d at 1316. Thus, the decision of the probate court must be based upon the actual services performed by the attorneys and upon the reasonable value of those services. *Id.* If the judgment of the trial court is not supported by the record or is contrary to law, "final judgment of modification cannot be rendered on reversal, but the cause must be remanded to the Probate Court for further proceedings according to law." *Watters v. Love* (1965), 1 Ohio App.2d 571, 579, 30 O.O.2d 595, 599, 206 N.E.2d 39, 45. Thus, the judgment of the probate court will be upheld when it is supported by evidence of the attorney's services and the value of those services.

In cases before the probate court, R.C. 2113.36 provides the means for the payment of reasonable attorney fees in probate cases:

"When an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator shall be allowed as a part of the expenses of administration. The court may at any time during the administration fix the amount of such fees and, on application of the executor or administrator or the attorney, shall fix the amount thereof."

The procedures governing the approval of contingency fee agreements in probate matters are set forth in Sup.R. 71(I), which provides:

"Prior to a fiduciary entering into a contingent fee contract with an attorney for services, an application for authority to enter into the fee contract shall be filed with the court, unless otherwise ordered by local court rule. The contingent fee on the amount obtained shall be subject to approval by the court."

The Staff Note to Sup.R. 71 explains that Sup.R. 71(I) "restates the court's authority to review the contingent fee contract to ascertain whether it meets with the additional standards of this rule." The additional standards set forth in Sup.R. 71 include:

"(A) Attorney fees in all matters shall be governed by DR 2–106 of the Code of Professional Responsibility.

" * * *

"(D) The court may set a hearing on any application for allowance of attorney fees regardless of the fact that the required consents of the beneficiaries have been given.

" * * *

"(G) * * * The application [for attorney fees] shall set forth a statement of the services rendered and the amount claimed in conformity with division (A) of this rule.

"(H) There shall be no minimum or maximum fees that automatically will be approved by the court."

 Although it is true that in most cases a contingent fee agreement between the parties should be upheld, the foregoing statutes and rules establish that the probate court is not bound by a prior agreement of the parties, and, in fact, where necessary the probate court may intervene to alter the fee. *Imler v. Cowan* (1989), 65 Ohio App.3d 359, 362, 583 N.E.2d 1355, 1357. In all cases, the probate court must "look at all the evidence to determine the reasonable value of an attorney['s] services." *Id.* In making its judgment, the probate court, like any trial court, must consider "(1) [t]ime and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) result obtained; and (4) experience, reputation and ability of counsel." (Citations omitted.) *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter* (1995), 100 Ohio App.3d 313, 324, 653 N.E.2d 1245, 1252. See, also, DR 2–106(B).[1]

 Therefore, even where the probate court has "pre-approved" a contingent fee agreement, that court retains jurisdiction to look into the reasonableness of the final fee to be paid. Sup.R. 71(I); see *Settlements of Betts* (P.C.1991), 62 Ohio Misc.2d 30, 37–38, 587 N.E.2d 997, 1002–1003. Furthermore, the Code of Professional Responsibility requires that a final fee meet certain standards of reasonableness, so as to not be excessive. DR 2–106(B). Thus, the probate court must review the contingent fee agreement in relation to the amount obtained on the client's behalf. Sup.R. 71(I). Furthermore, it may conduct this review at any time during the administration of the estate. R.C. 2113.36.

---

1. DR 2–106(B) sets forth the following factors "to be considered as guides in determining the reasonableness of a fee":

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

 In the instant case, the probate court reviewed the one-third contingency fee agreement in light of the final settlement of the suit and found that a fee equal to one-third of the settlement was not warranted. Specifically, the probate court found that the case had not required significant preparation for litigation, nor did it proceed to trial. For these reasons, the probate court reduced the fee from the pre-approved one-third of the settlement to one-quarter of the settlement.

The probate court was well within its powers in reviewing the contingency fee agreement, even though the same agreement had been approved earlier. It must be recognized that, although the agreement may have been "fair, customary, and reasonable" at the time it was made and initially approved by the probate court, the final circumstances of the case may be such as to require a re-evaluation of that earlier determination. In this regard, the probate court properly followed the mandate of R.C. 2113.36 and Sup.R. 71(I). We therefore find that an agreement may be properly challenged by a party with standing to do so, and the probate court may properly review its earlier judgment concerning the contingency fee agreement.

 However, at this point we note that the trial court did not provide sufficient justification for its decision, and we find that its decision was not supported by the evidence. On the whole, the probate court's decision fails to demonstrate that it reviewed the contingent fee agreement in conformance with standards of Sup.R. 71 and DR 2–106(B). The record in this case further reveals that the probate court did not hold a hearing on this matter, nor is there any evidence that the trial court examined the time, effort, or skill of the attorney in his representation of the estate.

Although we recognize that the case did not proceed to trial, the attorney seeking to enforce the agreement did obtain a substantial benefit to the estate. It was incumbent upon the probate court to more thoroughly review the time and effort of the estate's attorney and render its judgment in light of the facts and final resolution of the malpractice suit. Thus, we remand this issue to the probate court. There, the parties may present evidence and arguments on this issue, and the probate court will have the opportunity to properly review the pre-approved fee agreement.

Accordingly, we find the estate's cross-assignment of error to be well taken. The judgment of the probate court is reversed and the cause remanded.

*Judgment reversed*
*and cause remanded.*

POWELL, P.J., and WALSH, J., concur.