OPINION
Plaintiff-appellant, Lynette D. York, appeals a decision of the Warren County Court of Common Pleas, Probate Division, denying on remand a motion to distribute to her the balance of a legal malpractice settlement received on behalf of the estate of Donald York ("the estate").
The decedent, Donald York ("Donald"), died on December 10, 1995. Appellant is his niece. In Item II of his Last Will and Testament, dated April 19, 1995, Donald made a specific bequest giving appellant the real estate located at 1190 Marian Avenue, Maineville, Ohio. By Item III of the will, all of the rest, resi- due and remainder of the estate was bequeathed to Donald's brother, Leo York, sister, Ruth Jones, and nephew, Kenny Jones, to be divided equally among them. At the will's execution and at the time Donald died, Donald, his heirs, and his next-of-kin believed that Donald was the sole owner of the Maineville property. However, due to two instances of alleged negligence by a prior attorney ("the original attorney"), Donald was vested with only a one-sixth interest in the property. The remaining five-sixths interest was owned by other family members.
When Donald died, the estate's executor discovered the errors, and a dispute arose concerning how the interest in the property was to pass. Appellant hired her own counsel, and the estate's executor retained an attorney who filed a malpractice lawsuit against the original attorney. On October 2, 1997, the probate court approved the submitted contingency fee arrangement between the estate and its attorney, finding that the agreement was "fair, customary, and reasonable."
The estate's attorney then proceeded to contact the malpractice insurance carrier for the original attorney. The malpractice suit was quickly settled, resulting in a settlement payment to the estate of $116,667, representing five-sixths of the property's total value. By certificate of transfer filed in June 1998, Donald's undisputed one-sixth interest in the property passed to appellant without dispute.
The problems concerning the Maineville property began long before Donald's death. John and Stella York, Donald's parents, had five children, Donald, Leo, Ruth, Neil, and Raymond. When their mother, Stella York, died intestate, it was the intention of all intestate heirs that Donald receive the property. Accordingly, the original attorney was retained to effectuate this process. The attorney prepared waivers for each of Stella's children to execute that purported to transfer their interest to Donald. However, pursuant to R.C. 1339.60, the effect of the waivers was to legally presume that the children predeceased her. Rather than Donald receiving all of the interest in the property, Stella's children's heirs-at-law or next-of-kin received the intestate shares. The same attorney had earlier committed the identical error when Donald's father, John York, had died. At that time, it was the intention of all parties that Stella receive the property.
As a result of the attorney's errors, the interest in the property was divided among thirteen people. Donald received a one-sixth interest. Leo's two oldest children (Lyle and Loren) each received a four forty-fifths interest, while his three youngest children (appellant, Lance, and Luanne) each received a one-thirtieth interest. Ruth's three oldest children (Kenny, Randolph, and Daniel) received a 19/270th interest each, and her two youngest children (Sonja and Tamara) received a one-thirtieth share each. Donald's brother, Neal York, predeceased Donald, and, therefore, Neal's two children (Lawrence and Frank) each received a five thirty-sixths interest in the property.
Appellant challenged the distribution of the settlement proceeds, claiming that she was entitled to the entire settlement amount in lieu of the five-sixths interest she did not receive due to the malpractice. In a decision filed on June 18, 1998, the trial court denied her motion, holding that Donald could not bequeath an interest that he did not possess. The trial court treated the bequest of the property as adeemed with regard to the five-sixths interest, and ordered that the proceeds from the settlement be distributed as part of the estate's residue. Appellant appealed to this court.
On that same day, June 18, 1998, the trial court also issued a decision and entry granting appellant's motion to set aside the approved fee arrangement. The trial court noted that although the attorney's efforts resulted in a substantial benefit to the estate, the case did not require significant preparation for litigation nor did it proceed to trial. The trial court reduced the fee from the pre-approved one-third of the settlement to one-quarter of the settlement, or $29,166.75. The estate filed a cross-appeal challenging this entry.
By decision filed March 15, 1999, this court reversed and remanded the trial court's June 18, 1998 decisions as follows:
[W]e find that the probate court erred in finding that the bequest of the Maineville property was adeemed with regard to the five-sixths interest.
Although we find that ademption is not applicable to the instant case, we note that Donald, and therefore his estate, did have a right of action concerning the malpractice that led to his not being the sole owner of the property. This right of action had an easily ascertainable value, namely, the appraised value of the Maineville property. The estate's contention that those who presently own the five-sixths interest should also receive the benefit of the malpractice settlement would give these beneficiaries the double benefit of both the property and the monetary value of the property.
Such a state of affairs causes grave concern, because it was these same beneficiaries who earlier intended to retain no interests in the Maineville property and who knew of Donald's intention to give all of the property to appellant. These parties earlier sought to turn over their interests in the property to Donald. Now they seek to benefit from errors in which Donald played no part.
*** We are concerned that the parties did not raise, and that the probate court did not address, whether allowing those who own the five-sixths interest in the property to also retain the settlement proceeds would work an injustice by unjustly enriching such persons. *** We are also concerned that neither party raised the issue of whether any action to quiet title should have been made with regard to the Maineville property.
Due to these unresolved issues, we remand the case to the probate court.
In re Estate of York (1999), 133 Ohio App.3d 234, 240 ("York I").
This court further remanded the issue of whether appellant had standing to challenge the contingent fee agreement to the probate court for consideration based upon its determination of whether appellant was entitled to the settlement proceeds of the malpractice action. Id. at 241. Finally, this court reversed and remanded the probate court's reduction of attorney fees under the contingent fee agreement on the basis that "the probate court's decision fail[ed] to demonstrate that it reviewed the contingent fee agreement in conformance with standards of Sup.R. 71 and DR 2-106(B)." Id. at 244.
In June 1999, the twelve heirs who ended up inheriting the Maineville property sold the property for $140,000. As a result of receiving Donald's one-sixth interest in the property, and one-thirtieth interest as one of Leo's youngest children, appellant received $35,909.56 of the sale proceeds. By decision filed March 23, 2000, the probate court held that (1) the doctrine of unjust enrichment did not apply to the case at bar; (2) as a result, appellant was not entitled to the legal malpractice settlement proceeds; (3) rather, such proceeds were to be distributed equally between Leo, Ruth, and Kenny as part of the estate's residue; (4) appellant had no standing to challenge the contingent fee agreement; and (5) the contingent fee agreement originally approved by the probate court was reasonable and fair and to be honored. This appeal follows in which appellant raises the following three assignments of error:
Assignment of Error No. 1:
The trial court erred when it ruled that the doctrine of unjust enrichment did not apply to the facts of this case and the trial court further erred when it granted the residuary beneficiaries both the proceeds from the sale of the property in question and the proceeds from the prior malpractice settlement, which represented the 5/6 interest in the real estate not rightly transferred.
Assignment of Error No. 2:
The trial court erred when it ruled that Appellant had no standing to challenge the $38,000.00 attorney fee under the prior approved contingent fee agreement.
Assignment of Error No. 3:
The trial court erred when it ruled that the appropriate attorney fees for the negotiation of the settlement of the attorney negligence matter at One-Third (1/3) without requiring proper time records evidencing that the work performed was consumate [sic] with the award amount.
Before we address appellant's first assignment of error, we note that in York I, this court mistakenly wondered "whether allowing those who own the five-sixths interest in the property to also retain the settlement proceeds would work an injustice by unjustly enriching such persons." This court believed that to do so "would give these beneficiaries the double benefit of both the property and the monetary value of the property." In this appeal, relying upon this court's statements, appellant asserts with much force that "there is no question that the residuary beneficiaries realized a significant gain by receiving both the proceeds from the sale of the real estate and the proceeds from the legal malpractice settlement[.]"
With the lone exception of Kenny, who did receive a 19/270 interest in the Maineville property and is a beneficiary under the will's residual clause, the record is devoid of any evidence supporting our mistaken concern and appellant's conclusory assertion. Rather, the record before us shows the opposite. The three beneficiaries who are to receive the proceeds from the legal malpractice settlement as part of the estate's residue are Leo, Ruth, and Kenny. By contrast, the persons who received an interest in the property were Donald, Lyle, Loren, Lance, Luanne, Kenny, Randolph, Daniel, Sonja, Tamara, Lawrence, Frank, and appellant. When the property was sold, all but one (Donald) received their share of the sale proceeds. Thus, other than Kenny, the beneficiaries who received an interest in the property and subsequently their share of the sale proceeds are not the same beneficiaries who are to receive the legal malpractice settlement proceeds.
"[U]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belongs to another." Hummel v.Hummel (1938), 133 Ohio St. 520, 528. Recovery under the doctrine of unjust enrichment requires a trial court to impose a quasi-contractual relationship upon the parties. Id. at 525. Quasi-contracts are not true contracts, but are merely a legal fiction, an "equitable legal vehicle for obtaining a just result *** [which] does not depend upon the intentions of the parties, as one may become an obligor without ever consenting to the creation of an obligation." Lucas v. Costantini (Dec. 30, 1983), Clermont App. No. CA83-05-044, unreported, at 4-5. Quasi-contracts are used to prevent injustice and provide a remedy where none is otherwise available. Paugh Farmer, Inc. v. Menorah Home forJewish Aged (1984), 15 Ohio St.3d 44, 46.
The elements of a quasi-contract are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. "The purpose of the quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." Hughes v. Oberholtzer
(1954), 162 Ohio St. 330, 335.
Upon reviewing the record before us, we agree with the probate court that the doctrine of unjust enrichment does not apply to the case at bar. As stated, recovery under the doctrine of unjust enrichment requires the imposition of a quasi-contract which in turn requires, inter alia, that a benefit be conferred to a defendant by a plaintiff. While Leo, Ruth, and Kenny stand to receive the settlement proceeds, it cannot be said that such benefit was conferred to them by appellant. The record is devoid of any evidence that appellant did anything to convey the settlement proceeds upon the foregoing three beneficiaries. As a result, as no claim of unjust enrichment was made out, the trial court properly held that Leo, Ruth, and Kenny, and not appellant, are to be awarded the settlement proceeds as part of the estate's residue. Appellant's first assignment of error is overruled.
 Under her second and third assignments of error, appellant disputes the probate court's findings that she does not have standing to challenge the contingent fee agreement, and that the fee agreement as originally approved by the court is fair and reasonable. In York I, we specifically held that "whether appellant has standing to challenge the attorney fee agreement depends upon whether she is awarded the settlement proceeds. *** If she is not awarded the proceeds, appellant has no standing to challenge the agreement because it will have no bearing upon her interests." In re Estate of York, 133 Ohio App.3d at 241. In light of our holding on appellant's first assignment of error, appellant's second assignment of error is overruled and her third assignment of error is moot. App.R. 12(A)(1)(c).
 ________________ POWELL, J.
WALSH, J., concurs separately.
VALEN, P.J., dissents.