[Cite as *In re Estate of Green v. Alter*, 2019-Ohio-2862.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | : | JUDGES: |
| OF MATTHEW GREEN, DECEASED | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| MITCHELL ALTER AND | : | Case No. 18-CA-70 &18-CA-106 |
| MARK FROEHLICH | : | |
| | : | |
| Defendant-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Licking County
                   Probate Court, Case No. 2017-0562


JUDGMENT:            Affirmed


DATE OF JUDGMENT:       July 11, 2019


APPEARANCES:

For Plaintiff-Appellant          For Defendant-Appellee

ALETHA M. CARVER         PAUL GIORGIANNI
4775 Munson Street NW        1538 Arlington Avenue
P.O. Box 36963           Columbus, OH  43212-2710
Canton, OH  44735-6963

PATRICK D. MAGUIRE        GUARDIAN AD LITEM
1650 Lake Shore Drive         S. CRAIG PREDIERI
Suite 150              925 River Road
Columbus, OH  43204         Granville, OH  43023

*Wise, Earle, J.*

{¶ 1}  Administrator-Appellant Alexis Green appeals the July 31, 2018 judgment of the Licking County Probate Court approving requested attorney fees. Appellees are attorneys Mitchel Alter and Mark Froehlich.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On October 9, 2016, decedent Matthew Green was a passenger in Douglas Matthew Morrison's race-modified Audi R8. Morrison was believed to be travelling well in excess of 100 miles per hour when he lost control, crashed the Audi, and killed Green. The air bags in the vehicle never deployed.

{¶ 3}  The men were close friends. Green was a mechanic specializing in high-performance vehicles, and the two shared a love for "high-end exotic cars." Following the crash, when officers from the New Albany Police Department spoke with appellant, who is Green's surviving spouse, she advised there was nothing officers could tell her that she did not already know. She advised she knew what kind of car they were driving, that they liked driving it for obvious reasons, and that it could have been either one of them driving that day, so she did not blame Morrison for her husband's death.

{¶ 4}  Before seeking counsel, in January 2016, appellant met with a representative of Westfield Insurance, Morrison's insurer. The representative provided appellant with an advance payment for expenses, but advised her that there could be no discussion of settlement until she opened an estate for Green. Appellant was not the sole potential beneficiary. Beneficiaries included Green's two minor children as well as his parents.

{¶ 5}  On May 1, 2017, appellant spoke with appellees Alter and Froehlich regarding representation for wrongful death and survivorship action as well as probate. Appellant shared her biggest concern with the attorneys -- that she did not want Morrison to go to jail and wished no criminal charges upon him. She further advised she would be satisfied with less than Morrison's policy limits and desired no personal payment from Morrison as he had already pledged his willingness to take care of her and her children for the rest of their lives. Appellant did not sign a contract with Alter and Froehlich that day. She was, however advised that the typical attorney fee was one-third of any recovery.

{¶ 6}  On June 5, 2017, Attorney Steve Teetor, counsel for Morris through Westfield, disclosed Morrison's policy limits of $2.5 million. Appellant signed a probate fee contract with attorney Froehlich only on July 27, 2017, and decedent's estate was opened on August 1, 2017. On August 15, 2017, however, appellant signed a contingent fee contract to cover the services of both attorneys which stated the attorneys would receive one-third of the gross amount recovered whether "by settlement, arbitration, civil suit, trial or any other manner." On September 1, 2017, in accordance with Sup.R. 71(I), the contingent fee contract was filed with and approved by the probate court.

{¶ 7}  On August 31, 2017, criminal charges were filed against Morrison, specifically, one count of vehicular manslaughter, a misdemeanor of the second degree. Morrison's arraignment took place on September 28, 2017. He entered a no contest plea the same day and received no jail time.

{¶ 8}  On October 6, 2017 counsel for Westfield Insurance proposed mediation to settle the wrongful death action. On October 9, attorney Alter demanded policy limits of

$2.5 million plus $500,000 personal payment. On October 24, Westfield offered policy limits and appellant directed Alter to accept the same on October 25.

{¶ 9} On May 9, 2018, appellant through Froehlich, filed with the probate court an Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims. The application indicated attorney fees were disputed. The settlement Statement set forth the following:

| | | |
|---|---|---|
| Funds Received: | | $2,500,000.00 |
| Less Advance to Alexis Green: | | - 20,816.87 |
| | | $2,479,183.13 |
| Attorney Fees: | | - 826,394.37 |
| Medical Expenses: | | |
| | $13,171.69 | |
| Attorney Expenses | | |
| David Boyd, PhD | $ 2,200.00 | |
| IOD, Inc. | 58.00 | |
| Auto Check Report | 26.99 | |
| Filing Fees | 325.00 | |
| | $2,610.39 | |
| Total Expenses: | $15,782.08 | |
| Balance to Client: | $1,637,006.68 | |

{¶ 10} Also in May, 2019 the court appointed a guardian ad litem for appellant's two minor children.

{¶ 11} On June 1, 2018 attorneys Froehlich and Alter filed a Rule 71(G) Statement of Services Rendered. On June 15, 2018, appellant through new counsel filed a response on June 15, 2018 arguing that the agreed upon one-third attorney's fee was per se unreasonable.

{¶ 12} On June 19, 2018, a hearing was held on the matter. Appellees each testified on their own behalf and presented testimony from attorney Teetor and expert testimony from Attorney Michael Rourke. Appellant testified on her own behalf. At the conclusion of the hearing the trial court found the requested fee was neither illegal nor thoroughly excessive. On July 31, 2018, the trial court issued its Decision and Final Order which approved the attorney's fees and expenses of attorneys Froehlich and Alter, but did not rule on the May 9, 2018 application to approve settlement and distribution.

{¶ 13} Appellant filed a timely notice of appeal initiating case number 18CA-0070. On October 22, 2018, we granted appellant's motion to remand the matter to the probate court to rule on the May 9, 2018 application. On November 1, 2018, the probate court filed its entry approving settlement and distribution of wrongful death and survival claims. The trial court stayed determination of distribution pending the outcome of appellant's appeal. On November 9, 2018, appellant filed a second notice of appeal initiating case number 18CA-0106. On December 4, 2018, we consolidated the cases. The matter is now before us for consideration. Appellant raises three assignments of error as follow:

I

{¶ 14} "UNDER PROFESSIONAL CONDUCT RULE 1.5, THE PROBATE COURT ABUSED ITS DISCRETION WHEN IT FOUND APPELLEES' REQUESTED ATTORNEY FEES IN THE AMOUNT OF $826,394.37 REASONABLE AND NOT EXCESSIVE AS REQUESTED IN THE APPLICATION TO APPROVE SETTLEMENT AND DISTRIBUTION OF WRONGFUL DEATH AND SURVIVAL CLAIMS."

II

{¶ 15} "THE PROBATE COURT'S DECISION CONCLUDING ATTORNEY FEES IN THE AMOUNT OF $826,394.37 ARE REASONABLE AND NOT EXCESSIVE IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

III

{¶ 16} "THE PROBATE COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THE REQUESTED ATTORNEY FEES ARE REASONABLE AND NOT EXCESSIVE WHERE ATTORNEY FROEHLICH BREACHED FIDUCIARY DUTIES OWED MRS. GREEN THEREBY RESULTING IN A FAILURE OF SERVICES."

I, II

{¶ 1} We address appellant's first and second assignments of error together. In her first assignment of error, appellant contends the trial court abused its discretion in finding the requested attorney fees reasonable because appellees failed to produce adequate evidence to demonstrate the one-third contingency fee was reasonable and not excessive pursuant to Professional Conduct Rule 1.5(a). Appellant's second assignment of error argues the probate court's decision finding the attorney fees reasonable and not excessive is against the manifest weight of the evidence. We disagree.

Attorney's Fees

{¶ 2}  Prof.Cond.R. 1.5(a) provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

{¶ 3}   As set forth in our statement of facts, the instant case involved a contingent fee contract which provided Alter and Froehlich would receive one-third of whatever gross amount was recovered "whether by settlement, arbitration, civil suit, trial, or any other manner." Appellee's exhibit C. On the subject of contingent fee contracts, the 6th District Court of appeals in *Landis v. Grange Mut. Ins. Co.* 6th Dist. No. E-96-034, 1997 WL 77546 (Feb. 21, 1997) stated:

> Contingency fee agreements serve an important function in American life. Such agreements permit persons of ordinary means access to a legal system which can sometimes demand extraordinary expense. *Central Trust Co. v. Warburg* (1995), 104 Ohio App.3d 186, 190 [661 N.E.2d 275]. The mechanism by which this is accomplished is a contract between client and attorney whereby some or all of the risk involved in litigation is shifted to the attorney. The quid pro quo for relieving the client of this risk is that the agreement normally calls for the attorney to receive a percentage of any possible recovery. This would result, generally, in a somewhat greater compensation than the attorney might ordinarily receive. * * * To be sure, the contingency percentage is an arbitrary figure but, like liquidated damages in other contracts, is proper because it is a bargained for result.

{¶ 4}   It is well recognized that the typical contingent fee is one-third of the total recovery. *Landis,* fn. 5.

{¶ 5}   In *In re Estate of Johnson*, 178 Ohio App.3d 594, 2008-Ohio-5328, 899 N.E.2d 198 at ¶ 64, this court noted:

> A probate court is not bound by a prior agreement of the parties and may, in fact, when necessary, alter and reduce a contingent-fee agreement. *In re Estate of York* (1999), 133 Ohio App.3d 234, 243, 727 N.E.2d 607. The payment of reasonable attorney fees lies within the sound discretion of the probate court. *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 298, 620 N.E.2d 966. An abuse of discretion will be found where the probate court's decision is not supported by the record or is contrary to law. *In re Keller* (1989), 65 Ohio App.3d 650, 655, 584 N.E.2d 1312. Thus, the decision of the probate court must be based upon evidence of the actual services performed by the attorneys and upon the reasonable value of those services. *Id.*

### Manifest Weight

{¶ 6}   On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly

lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find *the greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in *inducing belief*." (Emphasis sic.)

{¶ 7} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St .3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 8} The probate court's judgment entry included an extensive analysis finding the one-third contingency fee was reasonable and not excessive, and we agree with the probate court's analysis.

{¶ 9} In the matter before us, it is undisputed that the contingent fee contract was signed by all parties and properly filed with the probate court. The probate court noted

that before signing the contract, appellant consulted with other attorneys who also quoted a fee of one-third the gross amount recovered. The court further found that appellant was not the sole potential beneficiary, thus counsel needed to consider the interests of all involved, not just appellant's wishes regarding Morrison's liability. The court further found that the case was far more complicated that it appeared on its face due to statements made by appellant to police, possible assumption of the risk and/or comparative negligence issues, a possible product liability case involving the failure of the airbags, an issue regarding lapse in proper protocol by responding EMS personnel, and collusion between appellant and Morrison to "shut down" the wrongful death claim and keep the claim at policy limits to protect Morrison's personal assets.

{¶ 10} The probate court was further persuaded by Attorney Rourke, appellee's expert witness, who testified a one-third contingency fee is standard practice in the legal profession, and a means by which a plaintiff can pursue meritorious claims which otherwise might not be pursued. Rourke testified he had reviewed the contingency contract in this matter and found it was a standard contract that he himself would use. Rourke testified the attorneys worked with appellant for two months before a contract was signed, did not charge an extra fee for Froehlich's services, and thus he saw no evidence of any attempt to take advantage of appellant. Although appellant complained that Alter did not spend enough time on the case to warrant a one-third fee, Rourke testified that contingency fees are results oriented rather that time oriented and that Alter obtained an excellent result for appellant despite the slew of landmines the case presented.

{¶ 11} Appellant presented no testimony to contradict appellee's expert, and testified she made a conscious decision to hire appellees and understood the fee would be one-third of the gross amount recovered plus out-of-pocket expenses.

{¶ 12} Upon due consideration of appellant's arguments, we find the probate court did not abuse its discretion in finding the requested fees reasonable and not excessive, nor are the court's findings against the manifest weight of the evidence. We therefore overrule the arguments contained in appellant's first two assignments of error.

III

{¶ 13} Appellant's final assignment of error essentially raises an ineffective assistance of counsel argument. Appellant argues the probate court abused its discretion when it found the attorneys fees reasonable and not excessive because attorney Froehlich breached fiduciary duties owed to appellant which resulted in a failure of services. Specifically, appellant contends Froehlich was unable to advise her as to whether it was in her best interest to sign the contingency agreement for the wrongful death claim because he was a party to the agreement and further breached his fiduciary duty to her by testifying against her at the hearing on attorney's fees.

{¶ 14} Our review of the record reveals appellant never raised this issue in her motion to determine the reasonableness of the contingency fee, nor was it developed during the hearing. Thus the trial court never ruled on the issue. The matter is therefore not properly before us here on appeal.

{¶ 15} The final assignment of error is overruled.

{¶ 16} The judgment of the Licking County Probate Court is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.


EEW/rw