## In re THOMPSON.

. [Cite as *In re Thompson,* 150 Ohio App.3d 98, 2002-Ohio-6065.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010127.

Decided Nov. 8, 2002.

John H. Metz, pro se.

W<small>INKLER</small>, Judge.

{¶ 1} Donald and Brenda Thompson retained John H. Metz and Albert T. Brown Jr. as counsel for a medical malpractice lawsuit filed against a doctor and others for injuries suffered by their daughter, Tesha Lanae Thompson, at her birth. The Thompsons executed a contingency-fee agreement dated January 24, 1997, whereby counsel would receive certain percentages of any amount recovered by the Thompsons, if litigation progressed beyond identified milestones. The remuneration percentages ranged from thirty-three and one-third percent to forty-five percent of the total recovery by the Thompsons. The Thompsons were also responsible for their counsel's trial-preparation costs.

{¶ 2} Before the malpractice lawsuit progressed to trial, the defendants offered a certain sum of money as a total settlement of all the Thompsons' claims. At that time, Donald Thompson filed an application for appointment as guardian of the estate of his daughter in the probate court, as well as an application to settle his daughter's claims in the medical malpractice lawsuit. The settlement application included a request for attorney fees in an amount that was forty percent of the total proffered settlement amount and that also included reimbursement for trial-preparation expenses. Donald Thompson attached to his settlement application copies of the contingency-fee agreement, the trial-preparation expenses, and a report from the child's neurologist.

{¶ 3} The probate court appointed Donald Thompson as guardian of his daughter's estate on January 11, 2001. The probate court then approved the settlement in the full amount proposed and ordered the payment of counsel's trial-preparation expenses. But the probate court then ordered as payment for attorney fees an amount that was only thirty-three and one-third percent of the

settlement amount, rather than the forty percent that had been proposed by Donald Thompson.

{¶ 4}   In its opinion on the issue of attorney fees, the probate court held that it had ordered only thirty-three and one-third percent of the settlement as attorney fees because Donald Thompson had not sought prior court authorization to proceed with the settlement.   The probate court noted that Sup.R. 71(I) required that the application for authority to settle the child's claims be filed before the fiduciary entered into a contingency-fee contract with an attorney for legal services.   The probate court noted that its Loc.R. 71.2 required the court's approval of an application for authority to enter into a contingency-fee agreement before such an agreement was executed.   The probate court also noted that its approval would not have been required had the contingency-fee agreement not exceeded thirty-three and one-third percent of the total recovery.   The probate court noted that, in the absence of prior court approval, Loc.R. 71.2(C) set a maximum attorney fee of thirty-three and one-third percent.

{¶ 5}   Metz filed various post-judgment motions, including a motion for reconsideration of the probate court's ruling on attorney fees and a motion to declare Sup.R. 71 and Loc.R. 71.2 unconstitutional.   Metz also appealed the probate court's judgment to this court.   This court then granted a limited stay of the appeal and remanded the matter to the probate court "for the sole purpose of permitting said court to consider and determine the various post judgment motions filed therein."   Following the remand, the probate court denied Metz's motion for reconsideration.   This court then lifted the stay on the appeal.   Metz now raises four assignments of error.   His is the only brief before us.

{¶ 6}   In his first assignment of error, Metz argues that the probate court erred by denying attorney fees in an amount equaling forty percent of the total settlement amount.   This court will not reverse the probate court's determination of an appropriate fee award absent a showing of an abuse of discretion.[1]   "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[2]

{¶ 7}   Sup.R. 71(I) provides, in pertinent part, as follows: "Prior to a fiduciary entering into a contingent fee contract with an attorney for services, an application for authority to enter into the fee contract shall be filed with the court, unless otherwise ordered by local court rule.   The contingent fee on the amount obtained shall be subject to approval by the court."

---

1.   See *In re Guardianship of Patrick* (1991), 66 Ohio App.3d 415, 416–417, 584 N.E.2d 86.

2.   *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 8}   Metz argues that the contingency-fee agreement in this case was executed on January 24, 1997, nine months before Sup.R. 71 became effective.[3] Therefore, Metz argues, "at that time, there was no requirement to obtain court authorization to enter the contract."

{¶ 9}   Metz is correct that Sup.R. 71 was not effective until after the Thompsons had executed the contingency-fee agreement.  But Metz ignores that former C.P.Sup.R. 40 was in effect at the time the fee contract was executed, and that the former rule was analogous to Sup.R. 71.[4]  Former C.P.Sup.R. 40(H) provided, in part, "Prior to a fiduciary entering into a contingent fee contract with an attorney for services, an application for authority to enter into the agreement shall be filed with the Court."[5]

{¶ 10}   We reject Metz's contention that the probate court was required to follow the terms of the contingency-fee agreement in this case, where no application for authority to enter into the agreement had been approved by the court.  Even if Sup.R. 71 was not effective until October 1997, because the prior rule was of similar import, Metz should have brought the contingency-fee contract to the probate court's attention prior to January 11, 2001.  Moreover, even if a contingency-fee contract had been approved by the probate court, the probate court would still have had jurisdiction to look into the reasonableness of the approved fee.[6]

{¶ 11}   Furthermore, R.C. 2111.18 provides that a guardian of the estate of a ward may settle a claim for personal injury "with the advice, approval, and consent of the probate court."  The Ohio Supreme Court has held that a probate court has subject-matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom.[7]

{¶ 12}   Metz next argues that the probate court in this case failed to review the reasonableness of the attorney fees as required by Sup.R. 71(A),

3.   See Sup.R. 71, effective Oct. 1, 1997.

4.   See comment to Sup.R. 71 ("This rule is analogous to former C.P.Sup.R. 40.").

5.   See *In re Estate of Messner v. Kaforey* (Dec. 15, 1993), 9th Dist. No. 16270, 1993 WL 526683; see, also, Sup.R. 71 comment ("The rule as amended adopts the previous rule which required the fiduciary to file an application to enter into a contingent fee contract prior to the contract becoming enforceable.").

6.   See *Estate of York* (1999), 133 Ohio App.3d 234, 244, 727 N.E.2d 607, discretionary appeal not allowed (1999), 86 Ohio St.3d 1442, 713 N.E.2d 1052, citing *In re Settlements of Betts* (1991), 62 Ohio Misc.2d 30, 37–38, 587 N.E.2d 997.

7.   See *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176, 593 N.E.2d 1379, paragraph one of the syllabus.

Loc.R. 71.2(A), and DR 2–106. We agree that such a review was not conducted by the probate court.

{¶ 13}    DR 2–106, provides, in part, as follows:

{¶ 14}    "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

{¶ 15}    "(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

{¶ 16}    "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

{¶ 17}    "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

{¶ 18}    "(3) The fee customarily charged in the locality for similar legal services.

{¶ 19}    "(4) The amount involved and the results obtained.

{¶ 20}    "(5) The time limitations imposed by the client or by the circumstances.

{¶ 21}    "(6) The nature and length of the professional relationship with the client.

{¶ 22}    "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

{¶ 23}    "(8) Whether the fee is fixed or contingent."

{¶ 24}    "Although it is true that in most cases a contingent fee agreement between the parties should be upheld, the foregoing statutes and rules establish that the probate court is not bound by a prior agreement of the parties, and in fact, where necessary the probate court may intervene to alter the fee. In all cases, the probate court must 'look at all the evidence to determine the reasonable value of an attorney [sic] services.' "[8]

{¶ 25}    This court has previously remanded cases because, in determining the amount of attorney fees, the probate court had failed to determine reasonableness.[9] Similarly, in this case, the record does not demonstrate that the probate

---

**8.** See *In re Estate of York* (1999), 133 Ohio App.3d 234, 244, 727 N.E.2d 607, discretionary appeal not allowed (1999), 86 Ohio St.3d 1442, 713 N.E.2d 1052, citing *Imler v. Cowan* (1989), 65 Ohio App.3d 359, 362, 583 N.E.2d 1355.

**9.** See *In re Estate of Rothert* (May 3, 2002), 1st Dist. No. C–010604, 2002 WL 834509; see, generally, *Boyle v. Carr* (May 25, 2001), 1st Dist. No. C–000455, 2001 WL 557888 (contingent fee must be reviewed for reasonableness against factors set forth in DR 2–106).

court addressed the reasonableness of the attorney fees. Therefore, we must reverse the judgment of the court and remand this matter to allow the probate court to thoroughly review all of the evidence presented in order to determine the reasonable value of the attorneys' services in light of DR 2–106. Metz's first assignment of error is well taken and is accordingly sustained.

{¶ 26} In his second and third assignments of error, which are presented together, Metz argues that the probate court erred by failing to declare Sup.R. 71 unconstitutional as applied, and that Sup.R. 71 and Loc.R. 71.2 violate Section 10, Article I of the United States Constitution. That provision states, in part, "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." Metz argues that Sup.R. 71 and Loc.R. 71.2 violate the Contracts Clause of the United States Constitution to the extent that the rules purport to void a contract for legal representation that is otherwise in compliance with DR 2–106.

{¶ 27} Initially, we note that we have already concluded under the first assignment of error that we cannot say that there was any compliance with DR 2–106, because the probate court failed to consider DR 2–106 in evaluating the reasonableness of the attorney fees. Moreover, under Section 5, Article IV of the Ohio Constitution, the Supreme Court of Ohio has general superintendence over all courts in the state, with the power to prescribe rules governing practice and procedure within the courts. And a common pleas court has inherent power to make reasonable rules governing practice and procedure where such rules do not conflict with the Constitution or with any valid statute.[10] Clearly, the probate court recognized that attorney fees were owed under the contract, limited itself to reviewing the amount, and did not void Metz's contract.

{¶ 28} In light of specific legislative enactments permitting a probate court to review attorney fees, for example, R.C. 2111.18 and R.C. 2113.36, any argument that the probate court was without inherent power to review the amount of the contingent attorney fee is meritless. All legislative enactments enjoy a strong presumption of constitutionality.[11] Metz's bare assertion that he suffered constitutional deprivations is not enough to overcome the presumption of constitutionality. Moreover, " 'If an argument exists that can support this assignment of error, it is not this court's duty to root it out.' "[12] With regard to

---

10. See *Cassidy v. Glossip* (1967), 12 Ohio St.2d 17, 41 O.O.2d 153, 231 N.E.2d 64, paragraph three of the syllabus.

11. See *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 418–419, 633 N.E.2d 504; *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus.

12. See *State v. Hillman* (Sept. 12, 2002), 10th Dist. Nos. 01AP–750 and 01AP–767, 2002-Ohio-4760, 2002 WL 31030719, at ¶ 10, quoting *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, 1998 WL 224934.

Metz's claimed ex post facto violation, the Ohio Supreme Court has noted that the United States Supreme Court views this constitutional protection to be applicable in criminal matters.[13]

{¶ 29} Thus, we cannot agree with Metz that Sup.R. 71 is unconstitutional as applied to him or that it, along with Loc.R. 71.2, violates provisions of the United States Constitution. Accordingly, Metz's second and third assignments of error are overruled.

{¶ 30} In the fourth assignment of error, Metz alleges that the probate court's award of fees violated public policy. He cites no legal authorities for this proposition. "Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. The principle must be applied with caution and limited to those circumstances patently within the reasons upon which the doctrine rests."[14] In general, parties of equal bargaining power are free to enter into any agreement the terms of which are enforceable by law.[15] But, as Metz must surely realize, that freedom is, in fact, on occasion actually limited by public-policy reasons.[16] With regard to alleged constitutional violations, on occasion the Ohio Supreme Court has allowed rational restrictions on an individual's right guaranteed under the Ohio Constitution, without violating that right.[17] Moreover, in the complete absence of citation to any legal authorities as required by App.R. 16(A)(7),[18] Metz has not persuaded this court that the circumstances before us are such that the probate court's reduction of the attorney fees violated public policy. Accordingly, Metz's fourth assignment of error is overruled.

13. See *State v. Walls*, 96 Ohio St.3d 437, 2002–Ohio–5059, 775 N.E.2d 829, ¶ 21.

14. See *Chickerneo v. Society Natl. Bank* (1979), 58 Ohio St.2d 315, 320, 12 O.O.3d 298, 390 N.E.2d 1183.

15. See *The Brandon/Wiant Co. v. Teamor* (1998), 125 Ohio App.3d 442, 448, 708 N.E.2d 1024, discretionary appeal not allowed (1998), 82 Ohio St.3d 1415, 694 N.E.2d 77.

16. See *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 381, 613 N.E.2d 183; *Sammarco v. Anthem Ins. Cos., Inc.* (1998), 131 Ohio App.3d 544, 551, 723 N.E.2d 128.

17. See *Painter v. Graley* (1994), 70 Ohio St.3d 377, 381, 639 N.E.2d 51.

18. See App.R. 16(A)(7); *Haynes v. Franklin* (Sept. 25, 2000), 12th Dist. No. CA2000–03–025, 2000 WL 1371000 (to receive consideration, issues raised must be argued and supported by legal authority); *State v. Watson* (1998), 126 Ohio App.3d 316, 321, 710 N.E.2d 340, discretionary appeal not allowed (1998), 82 Ohio St.3d 1413, 694 N.E.2d 75.

{¶ 31}   For the reasons given in our response to the first assignment of error, the judgment of the probate court is reversed, and this cause is remanded for further proceedings consistent with law and with this decision.

Judgment reversed
and cause remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.