OPINION
{¶ 1} Appellant D. Lee Johnson, Esquire, ("Johnson") appeals from the February 2, 2006 judgment of the Court of Common Pleas, Probate Division of Hancock County, Ohio awarding attorney fees in the amount of $100,000.00 in this case and directing that they should be apportioned $25,000.00 to Appellant Johnson and $75,000.00 to Appellee, Alan D. Hackenberg, Esquire ("Hackenberg").
 {¶ 2} This matter stems from an underlying incident wherein Robert C. "Bo" Stine, ("Robert"), the minor child, suffered an eye injury on July 29, 2003 when Luke Wentz, a minor, fired a paintball gun at Robert at a relatively short range. The Wentzes' were insured by Motorist Mutual Insurance Company.
 {¶ 3} On August 12, 2003 Robert's mother, Nancy Salsbury ("Salsbury"), retained Hackenberg to represent her and Robert. Salsbury and Hackenberg entered into a contingent fee contract for this representation, but Hackenberg never filed an application for authority to enter into the contingent fee contract with the probate court as required by Rule 71 of the Rules of Superintendence for the Courts of Ohio. (Sup.R. 71).
 {¶ 4} Hackenberg began investigating the claim and had Salsbury execute various medical releases on behalf of Robert so as to obtain Robert's medical records. Hackenberg was able to assemble the necessary medical records and forward them with a demand package and settlement proposal to Motorist Mutual Insurance Company.
 {¶ 5} On December 22, 2004 Salsbury advised Hackenberg by letter that she no longer wished Hackenberg to act as their attorney. On that same date, Salsbury retained attorney Johnson to represent her and Robert and signed a contingent fee contract with Johnson. However, Johnson also never filed an application for authority to enter into the fee contract with the probate court as required by Sup.R. 71.
 {¶ 6} Pursuant to the contingent fee contract between Salsbury and Hackenberg, Hackenberg retained an attorney lien in this matter. Hackenberg notified various people of his claimed attorney's lien for fees related to representation of Salsbury including Johnson and the insurance adjuster assigned to this claim. Johnson then successfully settled the underlying claim for Robert's injuries.
 {¶ 7} On May 16, 2005 the probate court issued an Entry Approving Settlement of a Minor's Claim. The court approved the proffered settlement of $300,000.00, ordered payment of $10,784.45 for medical and other expenses, ordered payment of $100,000.00 to Johnson for attorney fees, ordered payment of $115.00 to Johnson for reimbursement of suit expenses, ordered payment of $649.12 to Salsbury for damages on account of loss of service of Robert, and ordered that the net amount of $10,000.00 for Robert be deposited in his name, pursuant to R.C.2109.13, not to be released until he attains the age of majority. The remaining balance was to be paid into an annuity providing periodic payments to Robert after his 18th birthday.
 {¶ 8} On May 17, 2005 Hackenberg filed a Motion to Intervene, Motion to Vacate Prior Order, and Motion for Ex Parte Order, requesting that the probate court set aside any court-ordered approval of the minor's settlement. Hackenberg also requested that the court issue an ex parte order that any funds dispersed, including attorney fees, be paid into the court and remain in escrow until Hackenberg's claim for attorneys fees under the theory of Quantum Meruit was resolved.
 {¶ 9} On May 17, 2005 the probate court issued an Ex Parte Order regarding attorney Hackenberg's motions and ordered that the previous Entry Approving Settlement of a Minor's Claim be rescinded. The court further ordered that all monies in settlement of the matter, including attorney fees, were to be immediately returned to the Court for deposit in escrow pending a final decision of the court.
 {¶ 10} On July 29, 2005 the probate court entered Judgment modifying its May 17, 2005 Ex Parte Order to release all proceeds of settlement except for the approved attorneys' fees. The court also set a trial date to address the claims for attorneys' fees and ordered that "each attorney claiming legal fees for Quantum Meruit should supply an accounting of time spent working on the file to justify the reasonable value of services rendered the client prior to discharge."
 {¶ 11} On November 28, 2005 the probate court conducted a hearing on the matter of attorneys' fees. On February 2, 2006 the probate court entered Judgment on the issue of attorneys' fees and ordered that a fee of $100,000.00 be awarded in this case, to be divided $75,000.00 to Hackenberg and $25,000.00 to Johnson with an expense reimbursement of $115.00 allowed for Johnson.
 {¶ 12} Johnson now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE PROBATE COURT ABUSED ITS DISCRETION IN GRANTING APPELLEES ATTORNEY FEES IN THE AMOUNT OF $75,000.00 WHEN REASONABLE MINDS WOULD CONCLUDE THAT SUCH FEES, AFTER DISCHARGE AS THE MINOR'S ATTORNEY WERE NOT MERITED UNDER THE OHIO SUPREME COURT'S INTERPRETATION OF THE DOCTRINE OF QUANTUM MERUIT.
 {¶ 13} In his sole assignment of error, Johnson contends that the probate court abused its discretion when it set aside the fees it had initially awarded to him and subsequently abused its discretion in its interpretation and application of the doctrine of quantum meruit to apportion the attorney fees in this case.
 {¶ 14} Prior to reviewing Johnson's sole assignment of error, we must first determine whether the parties' failure to file an application for authority to enter into their respective fee contracts was fatal to the claims for contingent attorney fees in this case.
 {¶ 15} Sup.R. 71 addresses the issue of counsel fees and provides that attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility. However, an attorney representing a fiduciary in a personal injury case is subject to certain provisions of Sup.R. 71, of which section (I) specifically provides as follows:
 "Prior to a fiduciary entering into a contingent fee contract with an attorney for services, an application for authority to enter into the fee contract shall be filed with the court, unless otherwise ordered by local court rule. The contingent fee on the amount obtained shall be subject to approval by the court." (Emphasis added).
 {¶ 16} Therefore, failure to comply with Sup.R. 71(I) is ample authority for a probate court to reject a contingent fee contract which has not received prior court approval and find that such a contract is not enforceable. Messner v. Kaforey (Dec. 15, 1993), Summit App. No. 16270, 1993 WL 526683, unreported, citing In re Guardianship ofPatrick (1991), 66 Ohio App.3d 415, 584 N.E.2d 86; In re Settlements ofBetts (1991), 62 Ohio Misc.2d 30, 587 N.E.2d 997.[1] However, even if counsel had obtained the requisite court preapproval of the contingent fee contract with regard to the injured minor, the court would still have jurisdiction to look into the reasonableness of the approved fee.In re Thompson (2002), 150 Ohio App.3d 98, 101, 779 N.E.2d 816 citingIn re Settlement of Betts (1991), 62 Ohio Misc.2d at 38, 587 N.E.2d 997.
 {¶ 17} In the present case, we find that Hackenberg's and Johnson's failure to file an application with the probate court for authority to enter into their respective contingent fee contracts pursuant to Sup.R. 71(I) was not fatal to their claims as the probate court addressed the reasonableness of both contingency fee agreements at the November 28, 2005 hearing and in its February 2, 2006 judgment entry.
 {¶ 18} Next, we must also address the effect of Hackenberg's Motion to Intervene and Motion to Vacate Prior Order filed with the probate court on May 17, 2005. Although not specifically enumerated in the motions, Hackenberg's Motion to Intervene was governed by Civil Rule 24, which provides in relevant part as follows:
 "(A) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless that applicant's interest is adequately represented by existing parties."
 {¶ 19} The timeliness of a motion to intervene is a matter within the sound discretion of the trial judge. Lee v. Carrick (Sept. 21 1995), Seneca App. No. 13-95-10, 1995 WL 557530, unreported. Although Civ.R. 24 does not make a distinction between intervention before and after final judgment, the rule generally is applied less liberally after the judgment. Smoyer v. Smoyer (June 29, 1984), Wood App. No. WD-84-9,1984 WL 7926, unreported. In fact, intervention after final judgment has been entered is unusual and ordinarily will not be granted. The State ex rel.First New Shiloh Baptist Church v. Meagher (1998), 82 Ohio St.3d 501,504, 696 N.E.2d 1058. However, where it is necessary to preserve a person's right which cannot otherwise be protected, intervention may be allowed after final judgment. Smoyer, Wood App. No. WD-84-9,1984 WL 7926, unreported. A trial court's decision on the timeliness of a motion to intervene will not be reversed absent an abuse of discretion.Meagher, 82 Ohio St.3d at 503, 696 N.E.2d 1058.
 {¶ 20} This court notes that Johnson has not alleged that the probate court erred in granting Hackenberg's Motion to Intervene. Accordingly, this court shall not disturb the probate court's May 17, 2005 Ex Parte Order finding Hackenberg's Motion to Intervene to be well taken.
 {¶ 21} We find that Hackenberg's Motion to Vacate Prior Order was the equivalent of a motion for relief from judgment under Civ.R. 60(B).Dawson v. Udelsen (1987), 37 Ohio App.3d 141, 142, 524 N.E.2d 525. Civ. R. 60(B) provides as follows:
 "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation."
 {¶ 22} To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken. ABN AMRO Mtge.Group, Inc. v. Jackson (2005), 159 Ohio App.3d 551, 555, 824 N.E.2d 600, citing GTE Automatic Elec., Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. All three elements must be established, and the test is not fulfilled if any one of these requirements is not met. Id. at 556.
 {¶ 23} Generally, courts prefer suits to be concluded on their merits and thus characterize Civ.R. 60(B) as a remedial rule. Griffey v.Rajan (1987), 33 Ohio St.3d 75, 79, 514 N.E.2d 1122. However, the Ohio Supreme Court has determined that "[a] motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." Griffey, 33 Ohio St.3d at 77,514 N.E.2d 1122.
 {¶ 24} Although Hackenberg did not specify which provision of Civ.R. 60(B) entitled him to relief, it is apparent that only Civ.R. 60(B)(5) is arguably applicable. However, the grounds for invoking Civ.R. 60(B)(5) should be substantial. Caruso-Ciresi, Inc. v. Lohman (1983),5 Ohio St.3d 64, 66, 448 N.E.2d 1365.
 {¶ 25} We find that Hackenberg submitted substantial grounds for relief to warrant vacation of the probate court's May 16, 2005 Entry Approving Settlement. In his Motion to Vacate, Hackenberg specifically submitted that he and Salsbury had a contractual agreement whereby she agreed to compensate him 33 1/3 percent of any and all proceeds recovered as a result of the injury sustained by Robert and that he is entitled to recover attorney fees on the theory of Quantum Meruit. Additionally, Hackenberg submitted that he notified Johnson of the attorney's lien he retained in this matter, but that Johnson failed to notify the probate court of said lien. Finally, Hackenberg contended that he would suffer irreparable harm unless the probate court granted his Motion to Vacate and issued an Ex Parte Order setting aside the previously entered Court Order of disbursement in settlement.
 {¶ 26} This court recognizes that other appellate courts within Ohio have found that a post judgment intervenor may file a motion for relief from the previously entered judgment, pursuant to Civ.R. 60(B). See ABNAMRO Mtge. Group, 159 Ohio App.3d at 556, 824 N.E.2d 600; Mikles v.Sears, Roebuck Co. (March 5, 2004), Montgomery App. No. 20057,2004 WL 405795. Furthermore, this court notes that Johnson has not alleged that the probate court erred in granting Hackenberg's Motion to Vacate Prior Order. Therefore, based on the foregoing, we cannot find that the probate court abused its discretion in granting Hackenberg's Motion to Vacate Prior Order.
 {¶ 27} Finally, turning to the merits of Johnson's sole assignment of error, we note that we will not reverse the probate court's determination of an appropriate fee award absent a showing of an abuse of discretion. In re Thompson, 150 Ohio App.3d at 100, 779 N.E.2d 816. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. An abuse of discretion will be found where the probate court's decision regarding the award of attorney fees is not supported by the record or is contrary to law. In re Estate of York (1999),133 Ohio App.3d 234, 242, 727 N.E.2d 607. Thus, a judgment of the probate court regarding reasonable amount of fees will be upheld when it is supported by evidence of attorney's services and the value of those service. Id.
 {¶ 28} A client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to discharge. Reid, Johnson, Downes, Andrachik Webster v. Lansberry
(1994), 68 Ohio St.3d 570, 629 N.E.2d 431, paragraph one of the syllabus. An attorney discharged by a client is entitled to recover the reasonable value of services rendered to the client prior to discharge on the basis of quantum meruit. Fox Assoc. Co., L.P.A. v. Purdon
(1989), 44 Ohio St.3d 69, 72, 541 N.E.2d 448. Thus, pursuant toFox, even if an attorney is discharged without cause, and even if a contingent fee agreement is in effect at the time of the discharge, the discharged attorney recovers on the basis of quantum meruit, and not pursuant to the terms of the agreement. Reid Johnson,68 Ohio St.3d at 573, 629 N.E.2d 431.
 {¶ 29} A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in quantum meruit should consider the totality of the circumstances involved in the situation.Reid Johnson, 68 Ohio St.3d at 576, 629 N.E.2d 431. The number of hours worked by the attorney before the discharge is only one factor to be considered. Id. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship itself. Id.
 {¶ 30} Additionally, pursuant to Sup.R. 71, attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility which provides, in relevant part, as follows:
 (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
 (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
 1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 3. The fee customarily charged in the locality for similar legal services.
 4. The amount involved and the results obtained.
 5. The time limitations imposed by the client or by the circumstances.
 6. The nature and length of the professional relationship with the client.
 7. The experience, reputation, and ability of the lawyer or lawyers performing the services.
 8. Whether the fee is fixed or contingent.
 {¶ 31} Because the factors to be considered are based on the equities of the situation, the factors listed in DR 2-106, as well as the ultimate amount of quantum meruit recovery by a discharged attorney, are matters to be resolved by the trial court within the exercise of its discretion. Reid Johnson, 68 Ohio St.3d at 577, 629 N.E.2d 431.
 {¶ 32} At the November 28, 2005 hearing, in addition to the testimony of attorney Hackenberg, one expert witness testified regarding the reasonable value of the services offered by Hackenberg prior to his discharge. Jon Lafferty, an attorney from Toledo, testified that he reviewed numerous documents associated with the underlying case, including the Hancock Probate Court rules, a copy of the probate court file, a copy of the insurance adjustor's file, attorney Hackenberg's time sheet, Sup.R. 71, DR 2-106, and numerous cases including Reid,Johnson v. Lansberry, Fox Associates v. Purdon, In re Betts, and In reThompson, supra.
 {¶ 33} Lafferty testified that because neither Hackenberg nor Johnson filed the required application for authority to enter into their respective contingency fee agreements, these contracts were void. Therefore, Lafferty opined that it was within the trial court's discretion to determine the reasonableness of the fees pursuant to DR 2-106. In Lafferty's opinion, only subsections B(3), (4), and (8) of DR 2-106 applied to the facts of the present situation. Specifically, Lafferty testified that a one-third contingency fee would be normal in case such as this, that this is a case where there was more responsibility on the part of the attorney due to the seriousness of injury and the amount of coverage, but that this case was not inherently complex.
 {¶ 34} Notwithstanding the fact that the contingency fee contract signed by Salsbury and Hackenberg provided for a fee of $100,000.00 out of the total settlement of $300,000.00, Lafferty offered his expert opinion that "a reasonable and fair fee in this situation would have been $75,000.00, subject to the discretion of the court." Lafferty also opined that the value of Hackenberg's work "is 85% of whatever the fee is."
 {¶ 35} In support of this testimony, Lafferty stated as follows:
 "It appears to me that all the work that was needed in order for the adjuster to tender the policy limits of $300,000 was done by Attorney Hackenberg. However, and the reason that I only allocated 85% is because after the money was offered, Attorney Johnson did render professional services which were reasonable and necessary, including structuring part of the settlement, which was more than reasonable and appropriate."
The record reflects that Johnson offered no evidence at trial as to the quantum meruit value of his services. In fact, Johnson stated to the court that "We are not, Your Honor, making a claim under quantum meruit."
 {¶ 36} In its February 2, 2006 Judgment Entry, the probate court determined that "both attorneys had a contingency fee agreement with the guardian that called for the payment of a fee of one third of the proceeds of the settlement plus the cost of litigation" but that neither fee agreement had been previously approved by the court. Although accompanied by a somewhat inaccurate accounting of the expert testimony and the testimony of attorney Hackenberg, the court also found "that the reasonable value of Mr. Hackenberg's services is $75,000.00 since that is the only evidence regarding the value of the services rendered contained in the record." Nevertheless, based on its finding of reasonableness and the totality of the circumstances in this case, the court ordered "that a fee of $100,000.00 be awarded in this case, which should be divided $75,000.00 to Hackenberg and $25,000.00 to Johnson" with an expense reimbursement of $115.00 also allowed for Johnson.
 {¶ 37} Upon review of the record, we find that Johnson has failed to demonstrate how the probate court abused its discretion in this matter, especially in light of the fact that Johnson failed to offer any evidence beyond his original contingency contract, to support his claim for attorney fees. We further find that notwithstanding the probate court's apparent mischaracterization of the expert testimony in its Judgment Entry, and the court's failure to precisely follow the formula offered by the expert witness, the court's ultimate decision regarding the award of attorney fees is supported by the record and the probate court did consider the totality of the circumstances involved in this case before entering judgment.
 {¶ 38} Based upon the foregoing, we cannot find that the probate court acted unreasonably, arbitrarily, or unconscionably in awarding attorney fees in the amount of $100,000.00 in this case and directing that they should be apportioned $25,000.00 Johnson and $75,000.00 to Hackenberg.
 {¶ 39} Therefore, Johnson's sole assignment of error is overruled and the judgment of the Court of Common Pleas, Probate Division of Hancock County, is affirmed.
Judgment Affirmed.
 CUPP, J., concurs.
 ROGERS, J., dissents.
[1] Although Messner v. Kaforey was decided on the basis of obtaining prior probate court approval of a contingent fee contract as required by C.P.Sup.R.40(H), the comment to current Sup.R.71 provides that "this rule is analogous to former C.P.Sup.R. 40."